# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| JEFFREY TAEKMAN, M.D., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:22cv605 |
| | ) | |
| UNUM LIFE INSURANCE COMPANY | ) | |
| OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This case comes before the Court on "Defendant's Motion for Protective Order" (Docket Entry 18) (the "Protective Order Motion") filed by Unum Life Insurance Company of America (the "Defendant" or "Unum"); "Defendant's Motion for Leave to File Under Seal" (Docket Entry 17) (the "Sealing Motion") (collectively, "Defendant's Motions"); and "Plaintiff's Motion to Compel Discovery" (Docket Entry 32) ("Plaintiff's Motion") filed by Dr. Jeffrey Taekman (the "Plaintiff" or "Dr. Taekman"). For the reasons that follow, the Court will deny the Protective Order Motion and Plaintiff's Motion, but will grant the Sealing Motion.

## BACKGROUND

Plaintiff initiated this action under the Employee Retirement Income Security Act of 1974 ("ERISA") to recover long-term disability ("LTD") benefits under the Private Diagnostic Clinic, PLLC Long Term Disability Plan (the "Plan") offered by his former employer, the Private Diagnostic Clinic, PLLC at Duke University

Medical Center.  (See Docket Entry 1 (Plaintiff's Complaint) at 1-10.)[1]  Unum Group Policy No. 409811 002 (the "Policy") funds the Plan (see id., ¶ 10; Docket Entry 5 (Defendant's Answer), ¶ 10), and Defendant administers and insures both the Plan and Policy (see Docket Entry 1, ¶ 11; Docket Entry 5, ¶ 11).  "Unum is solely responsible for making all benefit determinations and for paying and providing all benefits under the Policy from Unum's own funds." (Docket Entry 1, ¶ 12; see Docket Entry 5, ¶ 12.)

"At all times relevant to this action, Dr. Taekman was a board-certified Anesthesiologist, and practiced medicine in the specialty of anesthesiology."  (Docket Entry 1, ¶ 9; see Docket Entry 5, ¶ 9.)  Plaintiff suffers from various health impairments, including Chronic Lymphocytic Leukemia ("CLL").  (See Docket Entry 1, ¶ 13; Docket Entry 5, ¶ 13; see also, e.g., Docket Entry 20 at 13 (indicating that "[Plaintiff] was diagnosed with CLL in 2015 and notes symptoms of fatigue" and also "has co-morbid medical conditions" including, among other ailments, "Crohn's Disease[ and] essential hypertension").)  The parties agree that, for at least "a period of time" (Docket Entry 5, ¶ 14), Plaintiff "became limited from performing the material and substantial duties of his regular occupation" (Docket Entry 1, ¶ 14; see Docket Entry 5, ¶ 14).  Plaintiff timely applied for benefits under the Policy (Docket

_____

[1]  Docket Entry page citations utilize the CM/ECF footer's pagination.

Entry 1, ¶ 15; Docket Entry 5, ¶ 15), and "Unum determined that Dr. Taekman's disabling medical conditions limited him from performing the material and substantial duties of his regular occupation for approximately twelve weeks" (Docket Entry 1, ¶ 18; see Docket Entry 5, ¶ 18). However, "[b]y letter dated August 12, 2020, Unum then denied Dr. Taekman's LTD benefits, effective on or about June 14, 2020." (Docket Entry 1, ¶ 19; see Docket Entry 5, ¶ 19.)

After an unsuccessful appeal of that decision (see Docket Entry 1, ¶¶ 20-23; Docket Entry 5, ¶¶ 20-23; Docket Entry 20-2 at 206-12), Plaintiff initiated this "action for payment of [LTD] benefits and enforcement of ERISA rights pursuant to 29 U.S.C. § 1132" (Docket Entry 1, ¶ 2; see Docket Entry 5, ¶ 2). In the parties' "Certification and Report of [Federal Rule of Civil Procedure] 26(f) Conference and Discovery Plan" (Docket Entry 12 at 1 (all-cap and bold font omitted)), "Defendant contend[ed] that[,] because this matter is governed by ERISA, discovery is limited to the administrative record [(at times, the 'AR')], exclusively." (Id. at 2.) More specifically,

> Unum contend[ed] that discovery in this matter is limited to production of the Administrative Records [sic], which is comprised of the applicable Plan documents and the claim file assembled and maintained by Unum in connection with Plaintiff's claims for Plan benefits. . . . Defendant argues that, like in Quesinberry [v. Life Ins. Co. of N. Am., 987 F.2d 1017 (4th Cir. 1993) (en banc)], the discovery should be limited to the administrative

3

record to promote the economic and judicial efficiency of ERISA claims.[2]

        In that regard, Unum contends that this matter does not involve "exceptional circumstances" or any reason that additional evidence is "necessary," such that the Court should exercise its discretion to allow limited discovery to supplement the Administrative Record.

(Id. at 3-4.)

Plaintiff disputed that contention, asserting that, "per [the United States Court of Appeals for the] Fourth Circuit precedent[,] . . . the evidence is not limited to the items Defendant chooses to describe as its 'Administrative Records.'" (Id. at 4 (citing Helton v. AT&T, Inc., 709 F.3d 343 (4th Cir. 2013)).) Further, "Plaintiff contend[ed] that discovery is appropriate and may be needed on subjects including but not limited to," inter alia, (i) "[t]he evidence known to Defendant at the time of its final decision, regardless of whether Defendant included such evidence among the documents in its claim file production," (ii) "[t]he adequacy and completeness of the documents Defendant includes in its claim file production, which must consist of all 'relevant information,' as that term is defined by ERISA," and (iii) "[t]he existence and impact of Defendant's conflict of interest as both the adjudicator and payor of benefit claims." (Id. at 4-5.) Nevertheless, "[a]s far as total limits, the Parties agree[d],

_____

2    In tension with this contention, the decision in Quesinberry notes the parties' participation in "the discovery stage of the case," id. at 1020 n.2, and affirms the district court's admission of live testimony at trial, see id. at 1027.

4

subject to the orders of this Court should Plaintiff propound discovery to which Unum had reserved objection about the permissible scope of that discovery," to 25 interrogatories, 25 requests for admission, 25 requests for production, and six depositions per party, with each deposition limited to no more than six hours. (Id. at 5.) The parties additionally agreed that "[a]ll discovery should be completed by April 28, 2023." (Id. at 3.)

Following an unsuccessful mediation (see Docket Entry 15 at 1), Plaintiff served interrogatories, requests for admission, and requests for production of documents on Defendant (see Docket Entry 18-1 (the "Discovery Requests") at 2-21). On April 12, 2023, Defendant responded to the Discovery Requests, answering some and objecting to others. (See Docket Entry 18-4 (the "Discovery Responses") at 2-39.) Among its various objections to some of the Discovery Requests, "Defendant object[ed] on the grounds that th[e relevant request] seeks discovery and information beyond the permissible scope allowed in ERISA benefits cases subject to the de novo standard of judicial review." (Docket Entry 18-4 at 3 (citing Quesinberry, 987 F.2d at 1025); see id. at 2-36.)[3] A day later, on April 13, 2023, Defendant filed Defendant's Motions. (See Docket Entry 17 at 3; Docket Entry 18 at 3.) For its part, the Sealing

---

[3] Defendant did not raise this objection to all of the Discovery Requests to which it objected. (See, e.g., id. at 15.)

5

Motion explains that "the Administrative Record will be attached as Exhibit C" to the Protective Order Motion and seeks "to seal Exhibit C to Defendant's [Protective Order] Motion." (Docket Entry 17 at 1-2.)

In turn, the Protective Order Motion notes Plaintiff's service of the Discovery Requests and maintains that, on April 11, 2023, Plaintiff's counsel "notified [defense counsel] that Plaintiff intended to notice and subpoena four individual depositions and a Rule 30(b)(6) deposition of [Defendant] (collectively 'the Proposed Depositions') for the purpose of obtaining testimony regarding the subject matter of the Discovery Requests." (Docket Entry 18 at 2.) Maintaining that "the Court's review of [Defendant's] administrative determinations is limited to the contents of the AR" (id.), the Protective Order Motion requests entry of a proposed protective order (see id. at 3), which states, in full:

> This Court finds that good cause has been shown to grant Defendant's [Protective Order Motion]. Accordingly, discovery in the above captioned case is limited to the administrative record. "In ERISA actions in which courts review the administrator's decision de novo, introduction of evidence outside the administrative record is permitted only in exceptional circumstances." *Donnell v. Metropolitan Life Ins. Co.*, 165 F. App'x 288, 297 (4th Cir. 2006) (citing *Quesinberry*[, 987 F.2d at 1026-27]). The administrative record is a complete and well-developed record, which allowed both parties to present evidence.

IT IS THEREFORE ORDERED as follows:

1. Defendant's [Protective Order Motion] is GRANTED.

6

> 2. This Protective Order governs all discovery in the above captioned case.
>
> 3. Discovery is limited to the administrative record.
>
> 4. The Parties will not engage in written discovery outside producing the administrative record.
>
> 5. The Parties will not conduct any depositions.
>
> 6. The Parties will not conduct any discovery outside of the administrative record.

(Docket Entry 18-5 at 1-2 (brackets omitted) (all-cap font in original).)

Plaintiff has opposed the Protective Order Motion (see Docket Entry 25 at 1-32), arguing that "[t]here is no basis in law or fact to support the broad and chilling discovery prohibition Defendant requests" (id. at 2). According to Plaintiff, the "[Protective Order] Motion is . . . contrary to the plain meaning of the Federal Rules of Civil Procedure [(the "Rules")] and should be denied in its entirety." (Id. at 32.) Further, although Plaintiff wants Exhibit C sealed, he "disagrees with Defendant's characterization of Exhibit C as the 'Administrative Record.'" (Docket Entry 26 at 1.) Thus, Plaintiff would have "the Court permit Defendant to file the contents of Exhibit C under seal, but . . . direct the [C]lerk to remove the inaccurate description of 'Administrative Record' from the Court's electronic docket." (Id. at 1-2.) Subsequently, on July 5, 2023, Plaintiff filed Plaintiff's Motion, asking that the Court, inter alia, compel responses to the March 13, 2023, Discovery Requests and depositions of Defendant's "employees Dr.

7

Dean, Dr. Kouros, Dr. Noris [sic] and Ms. Maier" (Docket Entry 32 at 3), as well as a Rule 30(b)(6) deposition of Defendant. (See id. at 3-4.) Defendant's time to respond to Plaintiff's Motion has not yet elapsed. (See Text Order dated July 15, 2023.)

**DISCUSSION**

**I. Protective Order Motion**

**A. Relevant Discovery Standards**

"The purpose of discovery is to provide a mechanism for making relevant information available to the litigants." Fed. R. Civ. P. 26 advisory committee's notes, 1983 Amendment. Therefore, "[u]nless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). However, "the simple fact that requested information is discoverable . . . does not mean that discovery must be had. On its own initiative or in response to a motion for protective order under Rule 26(c), a district court may limit [discovery] . . . ." Nicholas v. Wyndham Int'l, Inc., 373 F.3d 537, 543 (4th Cir. 2004). Indeed, "[d]istrict courts enjoy nearly unfettered discretion to control the timing and scope of discovery." Hinkle v. City of Clarksburg, 81 F.3d 416, 426 (4th Cir. 1996); see also Cook v. Howard, 484 F. App'x 805, 812 (4th

Cir. 2012) (observing that "[d]istrict courts are afforded broad discretion with respect to discovery").

Furthermore, "[o]ver the course of more than four decades, district judges and magistrate judges in the Fourth Circuit (including members of this Court) have repeatedly ruled that the party or person resisting discovery, not the party moving to compel discovery, bears the burden of persuasion." Kinetic Concepts, Inc. v. ConvaTec Inc., 268 F.R.D. 226, 243 (M.D.N.C. 2010) (collecting cases); see also Santiago v. Southern Health Partners, No. 1:15cv589, 2016 WL 4435229, at *2 (M.D.N.C. Aug. 19, 2016) (noting "the longstanding rule in this Circuit that the parties resisting discovery bear the burden of persuasion in a discovery dispute" and explaining that the 2015 amendments to Rule 26 did not "require shifting the burden of persuasion in all discovery disputes to the party seeking discovery"); Fed. R. Civ. P. 26 advisory committee's notes, 2015 Amendment ("Restoring the proportionality calculation to Rule 26(b)(1) does not change the existing responsibilities of the court and the parties to consider proportionality, and the change does not place on the party seeking discovery the burden of addressing all proportionality considerations."). Nevertheless, under the Rules, "[a] party or any person from whom discovery is sought may move for a protective order" and "[t]he [C]ourt may, for good cause, issue an order to protect a party or person from

9

annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1).

"Where a protective order is sought, the moving party bears the burden of establishing good cause. This burden requires more than stereotyped and conclusory statements, but rather the movant must present a particular and specific demonstration of fact as to why a protective order should issue." Chavis v. Plumbers & Steamfitters Loc. 486 Pension Plan, No. 1:17-cv-2729, 2019 WL 4879015, at *3 (D. Md. Oct. 3, 2019) (citation and internal quotation marks omitted); see also White v. McHugh, Civ. Action Nos. 3:09-1559, 3:09-2271, 2010 WL 4340399, at *2 (D.S.C. Sept. 3, 2010) ("The burden is on the party seeking protection to show 'good cause' by making a specific demonstration of facts in support of the request as opposed to conclusory or speculative statements about the need for a protective order and the harm which will be suffered without one."), report and recommendation adopted, 2010 WL 4318834 (D.S.C. Oct. 26, 2010). Furthermore, "[d]espite the broad discretion conferred on trial courts to decide when a protective order is appropriate, and what degree of protection is required, the standard for issuance of a protective order is high." Chavis, 2019 WL 4879015, at *3.

Additionally, "[a] court's customary reluctance to constrain discovery is heightened in the case of a motion seeking to prevent the taking of a deposition." Id. at *3 n.4 (internal quotation

10

marks omitted). Thus, "[a]bsent a strong showing of good cause and extraordinary circumstances, a court should not prohibit altogether the taking of a deposition. Not only are protective orders prohibiting depositions rarely granted, but [a movant] has a heavy burden of demonstrating the good cause for such an order." Champion Pro Consulting Grp., Inc. v. Impact Sports Football, LLC, No. 1:12cv27, 2014 WL 2559285, at *2 (M.D.N.C. June 6, 2014) (citation and internal quotation marks omitted) (final set of brackets in original).

The Rules further impose certain obligations on parties responding to discovery. See, e.g., Garey v. James S. Farrin, P.C., No. 1:16cv542, 2019 WL 7037606, at *7 (M.D.N.C. Dec. 20, 2019) (explaining that "parties must respond with specificity to discovery requests, including by making particularized objections," and that "general or 'boilerplate' objections to discovery requests lack validity"). For instance, "[Rule 33] requires that a litigant answer each interrogatory 'separately and fully in writing under oath.' If a litigant declines to answer an interrogatory based on an objection, '[t]he grounds for objecting . . . must be stated with specificity.'" Walls v. Ford Motor Co., No. 1:20cv98, 2021 WL 1723154, at *4 (M.D.N.C. Apr. 30, 2021) (citation omitted) (final set of brackets and ellipsis in original); see also Fed. R. Civ. P. 33(b)(4) ("Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure."). "Mere

recitation of the familiar litany that an interrogatory . . . is overly broad, burdensome, oppressive and irrelevant will not suffice." Walls, 2021 WL 1723154, at *4 (internal quotation marks omitted) (ellipsis in original). "In other words, general or boilerplate objections to discovery requests lack validity." Id.; see also, e.g., Fed. R. Civ. P. 26 advisory committee's notes, 2015 Amendment (explaining that proportionality amendments do not "permit the opposing party to refuse discovery simply by making a boilerplate objection that it is not proportional").

In turn, Rule 34 "requires that the request . . . describe with reasonable particularity each item or category of items to be inspected" and that the response either "permit inspection as requested or state with specificity the grounds for objecting to the request, including the reasons." Walls, 2021 WL 1723154, at *5 (brackets and internal quotation marks omitted) (ellipsis in original). "While it is not per se unreasonable for a party to object on the basis that a request is overly broad, burdensome, or seeks irrelevant information, the objecting party has an obligation to show specifically why responding to the request would create a burden or how the request is overly broad in relation to the claims and defenses presented in the litigation." Id. (brackets and internal quotation marks omitted). In addition, "[a]n objection must state whether any responsive materials are being withheld on the basis of that objection." Fed. R. Civ. P. 34(b)(2)(C).

12

Rule 36 similarly mandates that, in responding to a request for admission, "[i]f a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it." Fed. R. Civ. P. 36(a)(4). Moreover, "[t]he grounds for objecting to a request must be stated." Fed. R. Civ. P. 36(a)(5). Finally, "[i]f a motion for a protective order is wholly or partly denied, the [C]ourt may, on just terms, order that any party or person provide or permit discovery." Fed. Civ. P. 26(c)(2).

## B. Relevant ERISA Standards

As the Fourth Circuit has explained, its ERISA-related decisions have "focus[ed] on distinct but legitimate purposes of ERISA," such as "promoting the interests of employees and their beneficiaries" and ensuring "that ERISA not be interpreted in a manner that would afford employees and beneficiaries less protection under its provisions than they had before ERISA's enactment." Quesinberry, 987 F.2d at 1025. Other decisions, however, have "focus[ed] on the goal of providing prompt resolution of claims and the concern that district courts should not be made into substitute plan administrators," considerations that "warrant significant restraints on the district court's ability to allow evidence beyond what was presented to the administrator." Id. "In [the Fourth Circuit's] view, the most desirable approach to the

13

proper scope of *de novo* review under ERISA is one which balances these multiple purposes of ERISA." Id.

Thus, the Fourth Circuit has

adopt[ed] a scope of review that permits the district court in its discretion to allow evidence that was not before the plan administrator. The district court should exercise its discretion, however, only when circumstances clearly establish that additional evidence is necessary to conduct an adequate *de novo* review of the benefit decision. In most cases, where additional evidence is not necessary for adequate review of the benefits decision, the district court should only look at the evidence that was before the plan administrator or trustee at the time of the determination.

Id.

As explained in Quesinberry, "[a] limited discretionary approach is particularly appropriate because of the variety of ERISA cases which are brought to the federal courts." Id. For instance, "[s]ome ERISA plans provide for extensive administrative procedures and include lengthy records when appealed to the district court," whereas "[o]ther ERISA plans have limited administrative procedures and come to the district court with very meager records." Id. Additionally, "[s]ome ERISA cases involve complex medical issues crucial to the interpretation and application of plan terms, while others involve limited determinations of historical fact." Id. Finally, "[i]n some ERISA cases the payor and administrator are the same entity, such as this case which involves a claim for insurance benefits under the plan administered by the insurance company," but "[i]n other ERISA cases

14

they are not the same entity, as where the payor is the pension fund and the administrator is the employer." Id.; see also id. at 1026 ("Situations involving an insurance company and denials of insurance claims may therefore warrant the exercise of discretion to admit evidence not before the plan administrator because of concerns about impartiality and ERISA's interest in providing protection for employees and their beneficiaries."). "Because the district court may be presented with so many different types of ERISA cases, some flexibility is necessary in determining whether additional evidence should or should not be allowed." Id. at 1025-26; see also id. at 1026 ("The multiple purposes of ERISA, as well as the variety of claims that may be brought under the statute, support a limited discretionary standard for the scope of evidentiary review.").

Quesinberry thus concludes:

> In summary, . . . [district] courts conducting *de novo* review of ERISA benefits claims should review only the evidentiary record that was presented to the plan administrator or trustee except where the district court finds that additional evidence is necessary for resolution of the benefit claim. Exceptional circumstances that may warrant an exercise of the court's discretion to allow additional evidence include the following: claims that require consideration of complex medical questions or issues regarding the credibility of medical experts; the availability of very limited administrative review procedures with little or no evidentiary record; the necessity of evidence regarding interpretation of the terms of the plan rather than specific historical facts; instances where the payor and the administrator are the same entity and the court is concerned about impartiality; claims which would have been insurance contract claims prior to ERISA; and

15

circumstances in which there is additional evidence that the claimant could not have presented in the administrative process. [The Fourth Circuit] do[es] not intimate, however, that the introduction of new evidence is required in such cases. A district court may well conclude that the case can be properly resolved on the administrative record without the need to put the parties to additional delay and expense.

This list of factors is not exhaustive but is merely a guide for district courts faced with motions to introduce evidence not presented to the plan administrator. In determining whether to grant such a motion, the district court should address why the evidence proffered was not submitted to the plan administrator. . . .

Id. at 1026-27.[4]

Notably, though, "[t]he question here is not whether evidence outside of the administrative record will be admitted — that is a decision for the District Judge at trial or summary judgment — but whether [P]laintiff may obtain *discovery* of such evidence." N'Diaye v. Metropolitan Life Ins. Co., No. 17cv4260, 2018 WL 2316335, at *6 (S.D.N.Y. May 8, 2018) (emphasis in original); see also id. (observing that "the decision as to whether to allow discovery is distinct from the decision as to whether to allow consideration of additional evidence" (internal quotation marks

---

4    Courts' ability to consider evidence outside the administrative record remains more limited under the abuse of discretion standard of review compared to under the de novo standard. See, e.g., Helton, 709 F.3d at 352 ("Generally, consideration of evidence outside of the administrative record is inappropriate when a coverage determination is reviewed for abuse of discretion."); see also id. at 352 n.3 ("By contrast, on de novo review, district courts have limited latitude to consider evidence from outside the administrative record.").

omitted)).  Even in those courts where "[i]t is well settled that the standard that a plaintiff must meet to obtain discovery outside of the administrative record is lower than the standard a plaintiff must meet before the district court may consider evidence outside the administrative record," id. (brackets and internal quotation marks omitted), "[h]owever, the precise standard that an ERISA plaintiff must meet to obtain discovery outside of the administrative record is somewhat unsettled," id.

Nevertheless, a few principles have emerged.  First, even in ERISA cases, the Fourth Circuit "affords substantial discretion to a district court in managing discovery."  Beckner v. American Benefit Corp., 273 F. App'x 226, 232 (4th Cir. 2008).  Second, where the plaintiff identifies particular areas of discovery pertinent to considerations deemed open to inquiry by the Fourth Circuit, the defendant cannot simply "request[] permanent relief from discovery obligations extending beyond the administrative record pursuant to ERISA principles," Jenkins v. International Ass'n of Bridge, Structural, Ornamental & Reinforcing Ironworkers Local No. 79 Pension Fund, No. 2:14cv526, 2015 WL 1291883, at *11 (E.D. Va. Mar. 20, 2015) (brackets and internal quotation marks omitted), because, under those circumstances, "such broadsweeping relief is not appropriate," id.  Third, although some courts assess discovery requests without explicit consideration of the Quesinberry factors for admission of evidence, see, e.g., Arnold ex

17

_rel. Hill v. Hartford Life Ins. Co._, No. 7:07cv93, 2007 WL 1389606, at *2-4 (W.D. Va. May 9, 2007), those factors logically inform resolution of discovery disputes in de novo review situations, _see, e.g._, _Termini v. Life Ins. Co. of N. Am._, No. 2:06cv591, 2007 WL 1556850, at *3 (E.D. Va. May 21, 2007) ("Under the framework of ERISA, therefore, plaintiff's discovery is appropriate only if the Court determines that the [relevant] policy does not grant discretionary authority — resulting in the [c]ourt's undertaking a _de novo_ review of the administrator's denial of benefits — and that an exceptional circumstance is present.").

### C. Analysis

As a preliminary matter, Defendant's provision of the Discovery Responses moots its request for an order directing that "[t]he Parties will not engage in written discovery outside producing the administrative record" and that "[t]he Parties will not conduct any discovery outside of the administrative record." (Docket Entry 18-5 at 1-2.)  Additionally, Defendant did not provide notices of deposition or any evidence regarding the content of the Proposed Depositions in connection with the Protective Order Motion. (_See_ Docket Entries 18 to 18-5, 19, 29 to 29-2.)  Instead, Defendant's supporting memorandum asserts that Plaintiff's counsel informed Defendant's counsel "that Plaintiff intended to notice and subpoena four individual depositions and a Rule 30(b)(6) deposition of [Defendant] . . . for the purpose of obtaining testimony

18

regarding the subject matter of the Discovery Requests." (Docket Entry 19 at 2.) Because "an attorney's unsworn argument does not constitute evidence," United States v. White, 366 F.3d 291, 300 (4th Cir. 2004); see also Dillon v. BMO Harris Bank, N.A., No. 1:13-cv-897, 2014 WL 911950, at *2 (M.D.N.C. Mar. 10, 2014) (explaining that "[s]tatements in briefs are not evidence"), Defendant has not made the requisite "specific demonstration of facts in support of [its] request," White, 2010 WL 4340399, at *2, for a protective order precluding the Proposed Depositions.

Further, in their briefing on the Protective Order Motion, the parties largely fail to address specific Discovery Requests, instead discussing the Discovery Requests collectively. (See Docket Entries 18, 19, 25, 29.)[5] According to Defendant, "[t]he

_____

5    In its only reference to specific Discovery Requests, Defendant asserts, in a footnote:

> By way of example, Interrogatory Nos. 3-5 request statistical information regarding the number of medical reviews performed by the physicians who reviewed Plaintiff's medical records for a 5-year time period, as well as the opinions expressed in their reports and the outcome of the claim decisions in connection with which they reviewed medical records. Not only would the information sought fail to illuminate whether [Defendant's] administrative determinations were correct in this case from a de novo perspective, but these requests would be improper under the deferential abuse of discretion standard as well. [Defendant] asserted its multiple objections to Plaintiff's Discovery Requests in responses served on Plaintiff's counsel on April 12, 2023 (copy attached as Exhibit D).

(Docket Entry 19 at 4 n.1 (citations and bold font omitted).)

Case 1:22-cv-00605-LCB-LPA   Document 35   Filed 07/26/23   Page 19 of 38

Court's review of [Defendant's] administrative determinations is limited to the contents of the [administrative record]" (Docket Entry 19 at 5 (bold font omitted)), on the theory that "[n]one of the relevant exceptional circumstances identified by the court in *Quesinberry* are present here" (id. at 7). (See id. at 5-13).[6] Defendant also maintains that the Discovery Requests seek information "which may arguably relate to bias and conflict of interest for purposes of reviewing a claim decision for abuse of discretion but have no application to a *de novo* review" (id. at 14), rendering them disproportional. (See id. at 13-16.)

Plaintiff responds that "[a]t least four of the seven [exceptional circumstances identified in Quesinberry] are present in this case," namely (i) "[c]laims that require consideration of

---

For his part, in his opposition to the Protective Order Motion, Plaintiff stated that he "will separately address the merits of each of his requests in his [m]otion to [c]ompel and supporting materials" (Docket Entry 25 at 23), which he described as "forthcoming" (id. at 2). Despite asserting as early as April that he "anticipate[d] filing his motion [to compel] in the coming days" (Docket Entry 22 at 3), and reiterating again by mid-June that "Plaintiff intends to file a motion to compel Defendant's responses to his written discovery request and to compel the noticed depositions . . . . and anticipates filing [the] motion and supportive materials in the coming days" (Docket Entry 30 at 3), Plaintiff waited late into the night on July 5, 2023, to file Plaintiff's Motion. (See Docket Entry 32.) Moreover, as the discussion which follows above shows, Plaintiff failed to satisfy his Rule 37 obligations in bringing such motion, necessitating its denial.

6  The parties agree that the de novo standard applies to Plaintiff's claim for LTD benefits. (See, e.g., Docket Entry 1, ¶¶ 33-34; Docket Entry 19 at 5.)

complex medical questions;" (ii) "[c]laims that require consideration of issues regarding the credibility of medical experts;" (iii) "[i]nstances where the payor and the administrator are the same entity and the court is concerned about impartiality; and" (iv) "[c]laims which would have been insurance contract claims prior to ERISA." (Docket Entry 25 at 14 (citing <u>Quesinberry</u>, 987 F.2d at 1027-28).) Per Plaintiff:

> Most obviously, this case will require the [C]ourt to consider a complex medical question: whether the specific risk of exposure to COVID-19 presented by the material and substantial duties of a clinical anesthesiologist would preclude Dr. Taekman from performing his occupation given his fragile immune system and other physical limitations.
>
> . . . [T]he Court will also need to make findings regarding the credibility and weight to assign to the conflicting opinions of Plaintiff's treating physicians and Unum's record reviewers. Plaintiff should be permitted a reasonable opportunity to conduct discovery into the existence and extent of any relevant evidence which would further bear on the contrast between the qualifications of Dr. Brander and Unum's record reviewers.
>
> This case also presents the "exceptional circumstances" where the payor and the administrator are the same entity and the court is concerned about impartiality. . . . Unum is both the payor and the entity responsible for deciding claims under the Plan. Further, . . . Unum has a documented history of unfair claims practices, and Plaintiff has identified items and information missing from Unum's proposed record.
>
> Finally, benefits under the Plan are distributed pursuant to a group insurance policy, of which Plaintiff is a beneficiary. If this plan were not subject to ERISA, Plaintiff's claims would be governed by state insurance law.

(<u>Id.</u> at 14-15.)

In its reply, Defendant does not directly address whether this case satisfies the complex medical question, medical expert credibility, or insurance contract exceptional circumstances. (See Docket Entry 29 at 1-17.) Instead, Defendant asserts:

> In the same vein, Plaintiff argues that *Bursell v. Gen. Elec. Co.*, 243 F. Supp. 2d 460, 469 (E.D.N.C. 2003) — which [Defendant] cited for the court's declination to consider extra-record evidence where, like here, the claimant argued complex medical and medical expert credibility issues, but the court found the evidence could be understood based on the AR [D.E. 19, p. 13] — supports his position because "the *Bursell* opinion makes clear that the parties *had* conducted discovery, including depositions in that case." [D.E. 25, p. 27]. But *Bursell* actually supports [Defendant's] argument that the discovery Plaintiff seeks is not proportional to the needs of this case because the court in *Bursell* specifically held the information discovered was ***not*** necessary for the court's *de novo* review (which equates to a finding that it was not proportional to the needs of the case). Here, [Defendant] should not be subjected to expensive and time-consuming discovery of information that will not be utilized in the determination of whether Plaintiff was disabled under the provisions of the Plan.

(Docket Entry 29 at 12 (emphasis and certain brackets in original).)

However, in its opening memorandum, Defendant maintained that "[n]o complex medical questions or medical expert credibility issues are present" (Docket Entry 19 at 11 (bold font omitted)) on the grounds that "the issue is whether a risk of exposure to COVID-19 constitutes a disability under the terms of the Group Policy and the Plan based on the specific facts of Plaintiff's circumstances: his occupational duties, his medical conditions, and his ability to mitigate risk of contracting COVID-19 through

22

vaccination and proper use of [personal protective equipment]" (id. at 13). Notably, though, Defendant failed to provide support either for its proposition that the issue of the risks posed by COVID exposure for an immunocompromised anaesthesiologist does not constitute a complex medical question or that the credibility of the various doctors involved — who issued conflicting opinions on this key question — lacks relevance to this determination. (See id. at 11-13.) In any event, Defendant did not address Plaintiff's assertion that this matter satisfies Quesinberry's "insurance contract claims" exceptional circumstance (see Docket Entries 19, 29), thereby conceding that argument, see Kinetic Concepts, Inc. v. Convatec Inc., No. 1:08cv918, 2010 WL 1667285, at *6-9 (M.D.N.C. Apr. 23, 2010) (collecting cases).[7]

Plaintiff also argues that "several items . . . are missing from Exhibit C" (Docket Entry 25 at 21 (bold font omitted)), including "copies of articles [that] Plaintiff submitted to [Defendant] during the claims [process]" (id. at 22). According to Plaintiff:

> The articles contained information regarding the risk
> COVID-19 presents to individuals with CLL. See [(Docket
> Entry 20-1 at 31)]. These articles are part of the
> record evidence in this case, were presented to Defendant
> during the claim process, and are important for the

_____

7    Notably, two of Plaintiff's requests for admission explicitly address North Carolina insurance provisions (regarding treatment of examining physician's opinions, see 11 N.C. Admin. Code 4.0319(1)). (See Docket Entry 18-1 at 12.)

23

Court's understanding of the complicated medical issues in this case.

(Docket Entry 25 at 22-23.)[8]

In response, Defendant counters:

This assertion is demonstrably untruthful and misleading, as the referenced articles were not submitted to [Defendant] until after the final appeal decision was rendered; moreover, they were submitted to [Defendant] as exhibits to a demand letter from Plaintiff's counsel in connection with confidential pre-litigation settlement discussions which Plaintiff's counsel agreed would not be used in future pleadings. See Email dated April 13, 2022, **Exhibit A**; Signed Confidentiality Letter dated April 13, 2022, **Exhibit B**.

(Docket Entry 29 at 8 (emphasis in original).)

Contrary to Defendant's contention, the record reflects that Plaintiff submitted the referenced articles during the claims process, prior to Defendant's original denial. Specifically, the page of the administrative record referenced by Plaintiff on this front contains the following notation:

Activity
--------------------------------------------------------
Checked/Unchecked Indicator: No
Type: Auto-generated Name: Web/IVR Information Received

---

8      Plaintiff further notes that the administrative record lacks "the *curriculum vitae* [(each, a 'CV')] of [Defendant's] medical record reviewers," which Plaintiff requested in the Discovery Requests. (Id. at 21.) Defendant responds that "there is no requirement that CVs be included in the AR, particularly where the claims administrator is familiar with the qualifications of the reviewing physicians." (Docket Entry 29 at 7.) Regardless, the CVs contain information that may well inform the District Judge's ultimate credibility evaluations and the record contains no indication that producing the CVs imposed any appreciable burden on Defendant (see, e.g., Docket Entry 18-4 at 28 (raising no burden objection in agreeing to produce CVs)).

```
Status: Completed
Original Notify Date: 08/03/2020
Notify Date: 08/03/2020
Due Date:
Subject: Information Received
Upon Completion Notify Linked Claim Owner(s): No
Mark As Priority: No
Activity Owner: Massie, Katrina C
Action:

Request Fields
--------------------------------------------------------
Request: Massie, Katrina C 08/03/2020 14:20:17: Message:
Unsure if you saw these two papers.  Practicing
anesthesia would place me at even greater risk than the
generic CLL patient where risk is high, regardless of
disease stage.  It will not be safe for me to return to
work until there is a reliable vaccine.
https://cllsociety.org/2020/07/covid-19-severity-and-mor
tality-in-chronic-lymphocytic-leukemia-cll-patients/

Created By: Massie, Katrina C
Created Date: 08/03/2020 14:20:17  Create Site: Portland

Response Fields
--------------------------------------------------------
Response: Massie, Katrina C 08/03/2020 14:33:18: recd

Completed By: Massie, Katrina C
Completed Date: 08/03/2020 14:33:18  Complete Site:
Portland
```

(Docket Entry 20-1 at 31.)

The record does not reflect whether Plaintiff submitted copies of the articles to Defendant or instead provided only a link to the referenced "two papers" (id.), although Plaintiff's unsworn memorandum suggests that he provided actual "copies of [the] articles" to Defendant (Docket Entry 25 at 22).  In any event, Plaintiff presented the articles to Defendant in support of his claim (see Docket Entry 20-1 at 31), prior to either of Defendant's

25

claims-level doctor reviews, neither of which indicates whether the reviewing doctor considered the information in those articles (see id. at 31-39). Based on the notation in the administrative record, the information in those articles appears relevant to Plaintiff's LTD claim, and the provided link no longer returns results. Under the circumstances, the District Judge could choose to admit copies of these articles, see Quesinberry, 987 F.2d at 1026-27, and grounds may exist for discovery regarding Defendant's experts' consideration of the information in those articles.

Plaintiff further argues that Defendant has not produced evidence establishing that the Discovery Requests qualify as disproportional or impose any undue burden. (See Docket Entry 25 at 28 (arguing that "the objecting party must demonstrate *how* the request is burdensome by submitting affidavits or other evidence revealing the nature of the burden" and that "Defendant[] ha[s] not produced any such evidence here" (emphasis in original) (internal quotation marks omitted)).) Defendant responds that "Plaintiff's arguments do not establish the required proportionality under [Rule] 26(b)" (Docket Entry 29 at 9 (bold font omitted)). (See id. at 9-13.) Defendant, however, bears the burden of establishing good cause for issuance of the protective order. See, e.g., Chavis, 2019 WL 4879015, at *3; Kinetic Concepts, 268 F.R.D. at 243; see also Fed. R. Civ. P. 26 advisory committee's notes, 2015 Amendment (observing that party cannot "refuse discovery simply by

26

making a boilerplate objection that it is not proportional"). Although Defendant generally asserts that "the Court should not allow burdensome, expensive Discovery Requests and Proposed Depositions seeking irrelevant and inadmissible documents and information" (Docket Entry 19 at 16), its generalized arguments (see Docket Entries 19, 29) fail to offer "a particular and specific demonstration of fact as to why a protective order should issue," Chavis, 2019 WL 4879015, at *3 (internal quotation marks omitted).

The Court will therefore deny Defendant's Protective Order Motion. Given this denial, the Court may "order that [Defendant] provide or permit discovery." Fed. Civ. P. 26(c)(2). In evaluating the propriety of such relief, the Court notes that Defendant's Discovery Responses fall short in many respects. (See generally Docket Entry 18-4.) For instance, the Discovery Responses do not "state whether any responsive materials are being withheld on the basis of that objection," Fed. R. Civ. P. 34(b)(2)(C). (See Docket Entry 18-4 at 22-36.) Moreover, Defendant repeatedly answers the Discovery Requests "[s]ubject to and without waiving its objections" (id. at 3). (See id. at 3, 18-35.) "[T]he practice of providing answers 'subject to' objections is confusing and misleading." Brown v. Experian Info. Sols., Inc., No. 3:16cv670, 2017 WL 11632852, at *2 (E.D. Va. Apr. 17, 2017) (certain internal quotation marks omitted); see also id. ("The

27

court notes that defendant has made a number of discovery responses 'subject to' various objections.  This amounts to no answer at all, for it says, essentially, 'here is some information, but there could be more that you are not getting.'" (brackets and certain internal quotation marks omitted)).  In addition, many of the Discovery Responses contain, at least in part, boilerplate and/or general objections (see Docket Entry 18-4 at 2-36), which "are not useful to the court ruling on a discovery motion," Brown, 2017 WL 11632852, at *1 (internal quotation marks omitted).  Nevertheless, many of the Discovery Requests appear expansive in scope, as well as of limited relevance and/or questionable proportionality given the identified exceptional circumstances.  (See Docket Entry 18-1 at 2-19.)

In light of this Court's independent obligation to consider proportionality in adjudicating a discovery dispute, see Fed. R. Civ. P. 26 advisory committee's notes, 2015 Amendment, the Court will deny the Protective Order Motion without prejudice to Plaintiff promptly filing a motion to compel that specifically addresses the merits of each of the Discovery Requests and Proposed Depositions as to which Plaintiff seeks further discovery. Moreover, any such motion should clearly address why permitting such discovery, including any requested deposition, qualifies as proportional given the "significant restraints on the district court's ability to allow evidence beyond what was presented to the

administrator" and the need to "provid[e] prompt resolution of [ERISA] claims." Quesinberry, 987 F.2d at 1025. The motion must also comply with the dictates specified in the discussion which follows.

## II. Plaintiff's Motion

## A. Relevant Discovery Standards

To minimize the necessity of judicial intervention in discovery disputes, counsel have certain obligations in conducting discovery. See Fed. R. Civ. P. 26 advisory committee's notes, 1983 Amendment Subdivision (g) ("If primary responsibility for conducting discovery is to continue to rest with the litigants, they must be obliged to act responsibly and avoid abuse."); see also Wagner v. St. Paul Fire & Marine Ins. Co., 238 F.R.D. 418, 422 (N.D. W. Va. 2006) (observing that "[g]amesmanship" in discovery "is not allowed"). In particular, the Rules "oblige[] each attorney to stop and think about the legitimacy of a discovery request, a response thereto, or an objection" before making such request, response, or objection. Fed. R. Civ. P. 26 advisory committee's notes, 1983 Amendment, Subdivision (g) (emphasis added); see also id. (explaining that the Rules "require[] the lawyer to pause and consider the reasonableness of his request, response, or objection").

Additionally, before filing a motion to compel, a movant must "certif[y] that the movant has in good faith conferred or attempted

29

to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1). As our Local Rules indicate, this Court takes the parties' good-faith conferral obligations seriously:

> The Court will not consider motions and objections relating to discovery unless moving counsel files a certificate that after personal consultation and diligent attempts to resolve differences the parties are unable to reach an accord. The certificate shall set forth the date of the conference, the names of the participating attorneys, and the specific results achieved. It shall be the responsibility of counsel for the movant to arrange for the conference and, in the absence of an agreement to the contrary, the conference shall be held in the office of the attorney nearest the court location where the initial pretrial conference was convened or, in the absence thereof, nearest to Greensboro. Alternatively, at any party's request, the conference may be held by telephone.

M.D.N.C. LR 37.1(a).

## B. Analysis

Here, Plaintiff moved to compel discovery on July 5, 2023. (See Docket Entry 32 at 4.) In connection therewith, Plaintiff filed the following certification:

> I, [counsel's name], representing Plaintiff Jeffrey Taekman, M.D., pursuant to LR 37.1(a), hereby certify that counsel for the parties conferred by telephone and email on April 10, 2023 regarding the discovery requests propounded by Plaintiff. Undersigned counsel. . . conferred with [three attorneys], counsel for Unum Life Insurance Company of America.

> Counsel continued to discuss Plaintiff's discovery on April 11, 2023, and had a second telephone conference on April 12, 2023. Following multiple and lengthy communications, the parties concluded that their dispute involving the written discovery and deposition discovery had to be resolved by the Court.

30

> The parties are unable to reach an accord on the
> issues set forth in Plaintiff's Motion . . . despite
> personal consultation and diligent attempts to resolve
> their differences.
>
> Respectfully submitted, this the 5th day of July,
> 2023.

(Docket Entry 32-1 (the "Rule 37 Certification") at 1-2.)

Per the materials submitted in support of Plaintiff's Motion, Defendant provided supplemental responses to the Discovery Requests on June 2, 2023. (See Docket Entry 33-2 at 41; see also Docket Entry 33 at 9.) Neither Plaintiff's Rule 37 Certification nor his supporting memorandum indicates that the parties conferred after Defendant served its supplemental responses. (See Docket Entry 32-1 at 1-2; Docket Entry 33 at 6-10 (detailing "The Discovery Requests and the Parties' Meet and Confer Efforts" (bold font omitted)).) Nevertheless, Plaintiff seeks relief based on Defendant's supplemental responses. (See, e.g., Docket Entry 33 at 10 ("Unum's supplemental Interrogatory responses provide some additional information but remain insufficient because Unum still refuses to fully answer the presented interrogatories.").)

Because Plaintiff has not established that the parties satisfied their conferral obligations, the Court will deny Plaintiff's Motion, see M.D.N.C. LR 37.1(a), but without prejudice to Plaintiff filing a motion to compel after the parties engage in a good-faith conferral, consistent with the standards set forth herein, regarding their outstanding discovery dispute(s).

31

### III. Sealing Motion

"[T]he courts of this country recognize a general right to inspect and copy . . . judicial records and documents." Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 597 (1978). "The right of public access to documents or materials filed in a district court derives from two independent sources: the common law and the First Amendment." Virginia Dep't of State Police v. Washington Post, 386 F.3d 567, 575 (4th Cir. 2004). As relevant here, the common-law presumption of access "can be rebutted if countervailing interests heavily outweigh the public interests in access," and "the party seeking to overcome the presumption bears the burden of showing some significant interest that outweighs the presumption." Id. (brackets and internal quotation marks omitted). "[W]hether to grant or restrict access to judicial records" under the common law "is a matter of a district court's 'supervisory power,' and it is [a decision] 'best left to the sound discretion of the [district] court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case.'" Id. (final set of brackets in original).

"When presented with a request to seal judicial records," the Court begins by "determin[ing] the source of the right of access with respect to each document," as "only then can it accurately weigh the competing interests at stake." Id. at 576 (brackets and internal quotation marks omitted). The Court thereafter must

evaluate the competing interests under the following approach. First, "it must give the public notice of the request to seal and a reasonable opportunity to challenge the request." Id.[9] Next, "[the Court] must consider less drastic alternatives to sealing." Id. Finally, "if it decides to seal[, the Court] must state the reasons (and specific supporting findings) for its decision and the reasons for rejecting alternatives to sealing." Id.

"Adherence to this procedure serves to ensure that the decision to seal materials will not be made lightly and that it will be subject to meaningful appellate review." Id. This approach also reflects the reality that "[t]he operations of the courts and the judicial conduct of judges are matters of utmost public concern," Landmark Commc'ns, Inc. v. Virginia, 435 U.S. 829, 839 (1978), as well as that "the public's business is best done in public," Cochran v. Volvo Grp. N. Am., LLC, 931 F. Supp. 2d 725, 727 (M.D.N.C. 2013).

However, "the mere filing of a document with a court does not render the document judicial." In re: Policy Mgmt. Sys. Corp., 67 F.3d 296 (table), Nos. 94-2254, 94-2341, 1995 WL 541623, *4 (4th Cir. 1995); see also United States v. Moussaoui, 65 F. App'x 881,

---

9 As to that first requirement, Defendant filed the Sealing Motion on April 13, 2023. (See Docket Entry 17 at 3.) Accordingly, all interested persons have received "notice of the request to seal and a reasonable opportunity to challenge the request," Washington Post, 386 F.3d at 576, yet the docket reflects no objections to the request to seal Exhibit C (see Docket Entries dated Apr. 13, 2023, to present).

889 (4th Cir. 2003) ("The unclassified appendix contains a wide variety of materials, such as pleadings, hearing and deposition transcripts, and some discovery materials. Some of these documents fall within the common law presumption of access, while others are subject to the greater right of access provided by the First Amendment. Still others may not qualify as 'judicial records' at all." (citing United States v. Amodeo, 44 F.3d 141, 145-46 (2d Cir. 1995))); Amodeo, 44 F.3d at 145 ("We think that the mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access. We think that the item filed must be relevant to the performance of the judicial function and useful in the judicial process in order for it to be designated a judicial document."). Rather, "documents filed with the court are 'judicial records' if they play a role in the adjudicative process, or adjudicate substantive rights." In re U.S. for an Order Pursuant to 18 U.S.C. Section 2703(d), 707 F.3d 283, 290 (4th Cir. 2013).

Accordingly, "[b]ecause discovery motions" often "involve procedural, rather than 'substantive' rights of the litigants," Kinetic Concepts, Inc. v. Convatec Inc., No. 1:08cv918, 2010 WL 1418312, at *9 (M.D.N.C. Apr. 2, 2010), courts have found that no right of public access attaches to materials filed with discovery motions. See id. at *9-10; see also, e.g., Chicago Tribune Co. v. Bridgestone/Firestone, Inc., 263 F.3d 1304, 1312 (11th Cir. 2001)

34

("The better rule is that material filed with discovery motions is not subject to the common-law right of access, whereas discovery material filed in connection with pretrial motions that require judicial resolution of the merits is subject to the common-law right, and we so hold."). In such circumstances, the "good cause" standard of Rule 26(c) applies to the sealing request. <u>See Kinetic</u>, 2010 WL 1418312, at *10; <u>see also</u> <u>BASF Agro B.V. v. Makhteshim Agan of N. Am., Inc.</u>, Nos. 1:10cv276, 1:14mc8, 1:13cv422, 2015 WL 12991090, at *4 (M.D.N.C. July 21, 2015) ("If the[ relevant] documents only asked this court to rule on procedural discovery grounds, this court would only need to find that good cause existed for sealing these documents.").

Alternatively, to the extent that the materials qualify as "'judicial records' because they were filed with the objective of obtaining judicial action or relief pertaining to [the Protective Order Motion]," <u>In re U.S.</u>, 707 F.3d at 291, the common-law right of access applies, <u>see</u> <u>BASF Agro</u>, 2015 WL 12991090, at *4 (explaining that "it may also be that these briefs and exhibits are judicial records because they were filed with the objective of . . . contesting a motion to compel" and, as such, "the common-law presumption of access attaches to these documents"). Thus, "because the Fourth Circuit has not definitively resolved the access right question in the discovery motion context, the Court will conduct the 'competing interests' balancing test that would

35

govern if the common-law access right did apply, along with the 'good cause' inquiry." Kinetic, 2010 WL 1418312, at *10.

Under Rule 26(c), "[t]he [C]ourt may, for good cause, issue an order to protect a party or person from," inter alia, "undue burden or expense," Fed. R. Civ. P. 26(c)(1), including by restricting access to certain materials, see, e.g., Fed. R. Civ. P. 26(c)(1)(F) & (H) (authorizing sealing of depositions and "specified documents or information"). "Similarly, the common law presumption of access may be overcome if competing interests outweigh the interest in access," Kinetic, 2010 WL 1418312, at *10 (brackets and internal quotation marks omitted), and courts have found that "[a] party's interest in keeping private personal medical information heavily outweighs the public interests in access," Ghaisar v. United States, No. 1:19cv1224, 2020 WL 6948183, at *1 (E.D. Va. Oct. 27, 2020). In addition, both courts and the Rules recognize the need to protect personally identifiable information. See, e.g., Glisson v. Hooks, No. 1:19-cv-96, 2019 WL 2366470, at *3 (W.D.N.C. June 4, 2019) (collecting cases); Fed. R. Civ. P. 5.2. A lengthy document, Exhibit C contains extensive discussion of Plaintiff's medical history as well as personal identifiers and contact information. (See Docket Entries 20 to 20-2.)[10]  Moreover, given the exhibit's

---

[10]  In compliance with Rule 5.2, Defendant has redacted substantial amounts of such identifying information (see id.), but maintains that, "[b]ecause of the size of the Administrative Record, it would be impossible to ensure that all the personal identification data was successfully redacted" (Docket Entry 17 at

36

medical-focused-nature, "[r]edaction is not an appropriate alternative, as it likely would require blacking out most of the [exhibit]," <u>Glisson</u>, 2019 WL 2366470, at *3. Under the circumstances, including the limited relevance of Exhibit C to resolution of the Protective Order Motion, the Court will grant Defendant's Sealing Motion.

Finally, as previously noted, Plaintiff objects to "Defendant's characterization of Exhibit C as the 'Administrative Record'" (Docket Entry 26 at 1) and "requests that the Court . . . direct the [C]lerk to remove the inaccurate description of 'Administrative Record' from the Court's electronic docket" (<u>id.</u> at 1-2). To the extent that Plaintiff seeks such relief, he should have filed a separate motion under this Court's Local Rules. <u>See</u> M.D.N.C. LR 7.3(a). In any event, the Court denies said request as a waste of judicial resources. The Clerk's Office Staff's existing obligations keep them very busy, and the Court will not add additional burdens by directing them to change Defendant's choice of nomenclature in its electronic filings in support of its discovery motion, which has no preclusive effect on any substantive issues in this matter.

## CONCLUSION

Defendant has not established good cause for its requested protective order, and Plaintiff has not satisfied the prerequisites

---

2).

for compelled production of further discovery. However, the record justifies sealing Exhibit C to the Protective Order Motion.

**IT IS THEREFORE ORDERED** that the Protective Order Motion (Docket Entry 18) and Plaintiff's Motion (Docket Entry 32) are **DENIED** without prejudice to Plaintiff filing, by August 10, 2023, a motion to compel discovery that specifically addresses (i) the merits of each of the Discovery Requests and/or Proposed Depositions as to which Plaintiff seeks further discovery and (ii) why permitting such discovery, including any requested deposition topic, qualifies as proportional given the "significant restraints on the [Court's] ability to allow evidence beyond what was presented to the administrator" and the need to "provid[e] prompt resolution of [ERISA] claims," Quesinberry, 987 F.2d at 1025. Prior to Plaintiff filing any such motion, the parties **SHALL** confer about any outstanding discovery dispute(s) consistent with the standards, and in light of the principles, stated herein.

**IT IS FURTHER ORDERED** that the Sealing Motion (Docket Entry 17) is **GRANTED**.

This 26th day of July, 2023.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

38