**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

JEFFREY TAEKMAN, M.D.,            )
                                 )
            Plaintiff,            )
                                 )
      v.                         )        1:22cv605
                                 )
UNUM LIFE INSURANCE COMPANY      )
OF AMERICA,                      )
                                 )
            Defendant.           )

## MEMORANDUM OPINION AND ORDER

This case comes before the Court on "Plaintiff's Second Motion to Compel Discovery" (Docket Entry 40) (the "Second MTC") filed by Dr. Jeffrey Taekman (the "Plaintiff" or "Dr. Taekman") and "Plaintiff's Motion for Extension of the Discovery Period Pending Resolution of Discovery Motions" (Docket Entry 22) (the "Extension Motion"). For the reasons that follow, the Court will deny both motions.

## BACKGROUND

In August 2022, Plaintiff initiated this action under the Employee Retirement Income Security Act of 1974 ("ERISA") to recover long-term disability ("LTD") benefits under the Private Diagnostic Clinic, PLLC Long Term Disability Plan (the "Plan") offered by his former employer, the Private Diagnostic Clinic, PLLC at Duke University Medical Center. (See Docket Entry 1

(Plaintiff's Complaint) at 1-10.)[1] Unum Group Policy No. 409811 002 (the "Policy") funds the Plan (see id., ¶ 10; Docket Entry 5 (Defendant's Answer), ¶ 10), and Unum Life Insurance Company of America (the "Defendant" or "Unum") administers and insures the Policy (see Docket Entry 1, ¶ 11; Docket Entry 5, ¶ 11).[2] Plaintiff's Complaint raises one claim, "pursuant to 29 U.S.C. § 1132(a)(1)(B)," for "recover[y of] benefits and . . . enforce[ment of Plaintiff's] rights under the Policy and ERISA." (Docket Entry 1, ¶ 39.) The de novo standard of review applies to this claim. (See, e.g., Docket Entry 1, ¶¶ 33-34 (asserting applicability of de novo standard in Plaintiff's Complaint); Docket Entry 19 at 5 (asserting, in Defendant's memorandum, that it remains "undisputed that the Plan documents in this case do not contain an express grant of discretionary authority to [Defendant]" and thus that "the Court will review the challenged benefits decision de novo").) As a result, the Court's "job is to make [its] own independent determination of whether [Plaintiff] was entitled to [LTD] benefits. The correctness, not the reasonableness, of [Defendant's] denial of [LTD] benefits is [the

---

[1] Docket Entry page citations utilize the CM/ECF footer's pagination. For legibility reasons, this Opinion utilizes standardized capitalization and omits italicized, bold, and/or underlined font in quotations from the parties' materials.

[2] Thus, "Unum is solely responsible for making all benefit determinations and for paying and providing all benefits under the Policy from Unum's own funds." (Docket Entry 1, ¶ 12; see also Docket Entry 5, ¶ 12 ("admit[ting] th[at] allegation[]").)

Court's] only concern in this [case]." <u>Johnson v. American United</u>
<u>Life Ins. Co.</u>, 716 F.3d 813, 819 (4th Cir. 2013).

In October 2022, the parties filed their "Certification and
Report of [Federal Rule of Civil Procedure] 26(f) Conference and
Discovery Plan" (Docket Entry 12 (the "Rule 26(f) Report") at 1),
which noted their disagreement regarding the appropriate scope of
discovery (<u>see, e.g.</u>, <u>id.</u> at 1-2), but reflected their agreement
(i) that Defendant would produce (in lieu of initial disclosures by
either party) "a bates-stamped copy of the [P]lan documents,
Defendant's claims file and other items Defendant contends comprise
its 'administrative record' by November 10, 2022" (<u>id.</u> at 2), and
(ii) that "[a]ll discovery should be completed by April 28, 2023"
(<u>id.</u> at 3). On October 27, 2022, the Court adopted the parties'
Rule 26(f) Report, with a clarification not relevant here, thereby
establishing April 28, 2023, as the discovery deadline. (<u>See</u> Text
Order dated Oct. 27, 2022.)

On January 12, 2023, the parties engaged in an unsuccessful
mediation. (<u>See</u> Docket Entry 15 at 1.) A little over two months
later, on March 13, 2023, Plaintiff served his first set of written
discovery on Defendant. (<u>See</u> Docket Entry 40-1 (the "Discovery
Requests") at 1 (bearing title of "Plaintiff's First Set of
Interrogatories, Requests for Admission, and Requests for
Production of Documents to Defendant"), 19-20 (reflecting service
date of March 13, 2023).) On April 12, 2023, Defendant served its

initial responses thereto. (See Docket Entry 18-4 at 36, 38.) Meanwhile, on April 11, 2023, Plaintiff (through counsel) notified Defendant of his intent to notice depositions of Defendant and four of its employees and/or contractors (the "Proposed Depositions"). (See, e.g., Docket Entry 18 (the "Protective Order Motion") at 2; Docket Entry 22 at 2.) The record does not reflect whether Plaintiff actually served deposition notices on April 11, 2023, as the proffered subpoenas bear a date of issuance of April 26, 2023 (see Docket Entry 40-2 at 1, 4, 7, 10, 13),[3] and Plaintiff has provided no evidence regarding the service date (see, e.g., Docket Entry 22 at 2 (asserting, in unsworn filing, that Plaintiff served deposition notices on April 11, 2023); Docket Entry 25 at 7 (same)).[4]

In any event, on April 13, 2023, Defendant moved for a protective order regarding the Discovery Requests and Proposed Depositions. (See Docket Entry 18 at 2-3.) Defendant also sought "leave to file the Administrative Record," attached as Exhibit C to the Protective Order Motion, "under seal." (Docket Entry 17 ("Sealing Motion") at 2; see id. at 1-4.) In support of the

---

3 Although ostensibly issued on April 26, 2023, the subpoenas specify depositions at 9 a.m., 10 a.m., 11 a.m., 1 p.m., and 2 p.m. on April 26, 2023. (Id. at 1, 4, 7, 10, 13.)

4 As this Court previously explained, "an attorney's unsworn argument does not constitute evidence," United States v. White, 366 F.3d 291, 300 (4th Cir. 2004). See also Dillon v. BMO Harris Bank, N.A., No. 1:13-cv-897, 2014 WL 911950, at *2 (M.D.N.C. Mar. 10, 2014) (observing that "[s]tatements in briefs are not evidence").

4

Sealing Motion, Defendant submitted the declaration of one of its Lead Appeals Specialists, Kesley Maier. (See Docket Entry 17-1 (the "Declaration"), ¶ 1.)

As relevant here, Maier averred:

The Administrative Record . . . is comprised of the applicable Plan document . . . and the claim file assembled by [Defendant] in connection with Plaintiff's claim for LTD benefits under the Plan. The claim file contains the documents submitted to [Defendant] by or on behalf of Plaintiff, and the correspondence and recorded communications between and among Plaintiff, his physicians and attorney(s), and representatives of [Defendant], concerning Plaintiff's claim for benefits under the Plan. It also contains the medical and vocational information received and reviewed by [Defendant], and other information developed during [Defendant's] evaluation of the claim.

The claim file contains all of the facts known to [Defendant] at the time the appeal decision was rendered. Everything [Defendant] did and considered during its investigation of Plaintiff's claim and in deciding his appeal is contained in the claim file, including any additional material submitted during the appeal.

In November 2020, Plaintiff requested that a copy of his claim file be sent to him. Before a claim file is sent to [a] claimant or the claimant's attorney, it is reviewed by the Benefit Specialist to determine if any documents: (a) concern another claimant or third-party (such as misfiled documents or medical records sent in error by a treatment provider for a patient who is not the claimant), and (b) attorney-client privilege documents. If such documents are located within the claim file, they are removed prior to sending the claim file to the claimant or attorney. The Lead Benefit Specialist who reviewed Plaintiff's claim file did not locate or remove any such documents as noted in the Activity log found in the Administrative Record at page UA-CL-LTD-000327. Consequently, the entire file was sent to Plaintiff via encrypted e-mail on December 3, 2020.

After the appeal decision on Plaintiff's claim was rendered, he again requested a copy of his claim file.

5

As the Lead Appeal Specialist, [Maier] sent the file to Plaintiff by letter of August 5, 2021 and notified Plaintiff that, to the extent his file contained attorney-client privileged documents or other documents [Defendant] was not required to provide, such documents were not included. However, no such documents were located or removed from Plaintiff's claim file at that time and the entire file was sent to Plaintiff via U.S. Mail, as noted in the Activity log found in the Administrative Record at page UA-CLLTD-000750.

On April 11, 2022, Plaintiff's attorneys called [Defendant] to discuss the possibility of a pre-litigation settlement of Plaintiff's claim and spoke with Tracy McLaughlin of [Defendant's] Alternative Resolution Team. Ms. McLaughlin and Plaintiff's attorneys entered into a confidentiality agreement whereby they agreed to keep settlement discussions confidential and agreed not to disclose settlement communications in any pleadings, discovery motions or papers, trial proceedings, or in any other manner. For this reason, [Defendant] has withheld all settlement communications and Alternative Resolution Team documentation from the Administrative Record filed with the Court, pages UA-CL-LTD-000751 through UA-CL-LTD-000878.

(Id., ¶¶ 4-8 (paragraph numbering omitted).)

Plaintiff concurred in the request to seal Exhibit C, but objected to identifying it as the "Administrative Record." (See generally Docket Entry 26.) According to Plaintiff:

Courts often refer to the evidence that was presented to the Plan Administrator during the claims process as the "Administrative Record." However, that term does not appear in ERISA's statute or claims regulations. The evidence admitted by the Court at trial will include "the evidentiary record that was presented to the plan administrator or trustee" and any other evidence the Court deems prudent for its resolution of the benefit claim. Quesinberry [v. Life Ins. Co. of N. Am.], 987 F.2d [1017,] 1026-27 [(4th Cir. 1993) (en banc)]. Accord, Tekmen [v. Reliance Standard Life Ins. Co., 55 F.4th 951, 961] n.6 [(4th Cir. 2022)] (district courts are to review the evidence that was before the

6

administrator, and may review additional evidence when necessary to conduct an adequate de novo review of the benefit decision).

(Docket Entry 25 at 17-18; see also Docket Entry 26 at 4 ("The Court will adjudicate Plaintiff's claim by reviewing the record that was in front of Defendant during the claims process and any other evidence the Court deems relevant to its analysis." (citing Quesinberry, 987 F.2d at 1025-27)).) Plaintiff therefore asked "the Court [to] permit Defendant to file the contents of Exhibit C under seal, but to direct the clerk to remove the inaccurate description of 'Administrative Record' from the Court's electronic docket." (Docket Entry 26 at 2.)[5]

Meanwhile, Plaintiff repeatedly asserted that he would file a motion to compel discovery responses and depositions. For instance, on April 27, 2023, Plaintiff moved for additional time to respond to the Protective Order Motion and Sealing Motion (collectively, "Defendant's Motions"). (See Docket Entry 21.) According to that filing, during "meet-and-confer conferences" on April 14, 2023, and April 20, 2023, "Plaintiff's Counsel informed Defendant's Counsel that Plaintiff intends to file a motion to compel Defendant's response to the written discovery and depositions, in addition to responding to Defendant's Motion[s]."

_____

5 Finding that "the record justifies sealing Exhibit C to the Protective Order Motion," the Court granted the Sealing Motion (Docket Entry 35 at 38), but denied Plaintiff's labeling request (see id. at 37).

7

(Id. at 3.) Similarly, the Extension Motion, filed April 28, 2023, reports that "Plaintiff is finalizing his Motion to Compel with respect to Plaintiff's March 13, 2023 Written Discovery and April 11, 2023 Notices of Deposition. Plaintiff anticipates filing his motion in the coming days." (Docket Entry 22 at 3.) Moreover, in his opposition to the Protective Order Motion, filed May 11, 2023, Plaintiff relies upon his "forthcoming Motion to Compel Discovery and supporting materials" (Docket Entry 25 at 2), asserting that he "will separately address the merits of each of his requests in his Motion to Compel and supporting materials" (id. at 23). Finally, Defendant's motion to reset the dispositive motions deadline, filed June 14, 2023, includes the following statement from Plaintiff:

> As documented in Plaintiff's [Extension Motion], Plaintiff intends to file a motion to compel Defendant's responses to his written discovery request[s] and to compel the noticed depositions. Plaintiff recently received supplemental responses to its [sic] written discovery requests from Defendant, and anticipates filing its [sic] motion and supportive materials in the coming days. As set forth in Plaintiff's Response to Defendant's Motion for Protective Order, it[] is Plaintiff's position that there are issues of material fact which would preclude summary judgment in this case, and that this case will be resolved under Rule 52[ of the Federal Rules of Civil Procedure (the "Rules")]. Nonetheless, Plaintiff does not object to Defendant's request to defer the deadline to file any dispositive motions until the resolution of the parties['] pending and soon-to-be-filed discovery motions.

(Docket Entry 30 at 3 (citation and internal quotation marks omitted).)

Notwithstanding the repeated assertions of an imminent motion to compel, Plaintiff did not file such a motion in April, May, or June. (See Docket Entries dated Jan. 31, 2023, to July 5, 2023.) Instead, Plaintiff waited until nearly midnight on July 5, 2023, to file a motion to compel. (See Docket Entry 32 ("Plaintiff's First MTC").) Moreover, despite its "submi[ssion on] the 5th day of July, 2023" (Docket Entry 32-1 at 2), the motion's supporting "Rule 37 Meet and Confer Certificate" (id. at 1) reports that counsel for the parties conferred only on April 10, 2023, April 11, 2023, and April 12, 2023 (see id.).

Finding that "Defendant ha[d] not established good cause for its requested protective order, and Plaintiff ha[d] not satisfied the prerequisites for compelled production of further discovery," the Court denied both the Protective Order Motion and Plaintiff's First MTC. (Docket Entry 35 (the "July Opinion") at 37-38.) In so doing, the July Opinion emphasized the Court's limited ability to consider material outside the administrative record in adjudicating Plaintiff's claim. (See, e.g., id. at 13-16 (noting "significant restraints on the district court's ability to allow evidence beyond what was presented to the administrator," as well as the United States Court of Appeals for the Fourth Circuit's admonition (i) that "[t]he district court should exercise its discretion" "to allow evidence that was not before the plan administrator" "only when circumstances clearly establish that additional evidence is

9

necessary to conduct an adequate _de novo_ review of the benefit decision," which may occur in certain "[e]xceptional circumstances," and (ii) that, "[i]n most cases, where additional evidence is not necessary for adequate review of the benefits decision, the district court should only look at the evidence that was before the plan administrator" (internal quotation marks omitted) (emphasis added)).)[6]   The Court further noted that, although Defendant fell short in its request for a protective order and in various of its (initial) responses to the Discovery Requests, "many of the Discovery Requests appear expansive in scope, as well as of limited relevance and/or questionable proportionality given [Plaintiff's] identified exceptional circumstances" (id. at 28).  (See id. at 27-28.)

Accordingly:

> In light of this Court's independent obligation to consider proportionality in adjudicating a discovery dispute, see Fed. R. Civ. P. 26 advisory committee's notes, 2015 Amendment, the Court [denied] the Protective Order Motion without prejudice to Plaintiff promptly

---

6  As even Plaintiff concedes (see Docket Entry 25 at 17-18), courts refer to the materials before the plan administrator during the benefits determination as the "administrative record."  See, e.g., Tekmen, 55 F.4th at 961 ("In conducting de novo review of a denial of benefits under ERISA, the district court undertakes a careful examination of the often-voluminous administrative record to determine whether the claimant was entitled to benefits.  This may involve assessing credibility and determining the appropriate weight to assign evidence. . . .  Where there are disputed issues of material fact, a Rule 52 bench trial, which will typically be limited to the administrative record that was before the plan administrator, is appropriate." (footnote omitted)).  This Opinion does the same.

> filing a motion to compel that specifically addresses the merits of each of the Discovery Requests and Proposed Depositions as to which Plaintiff seeks further discovery. Moreover, any such motion should clearly address why permitting such discovery, including any requested deposition, qualifies as proportional given the "significant restraints on the district court's ability to allow evidence beyond what was presented to the administrator" and the need to "provid[e] prompt resolution of [ERISA] claims." <u>Quesinberry</u>, 987 F.2d at 1025. The motion must also comply with the dictates specified in the [July Opinion regarding, inter alia, the parties' conferral obligations and counsel's obligations "to <u>stop and think</u> about the legitimacy of a discovery request" and "the reasonableness of his request" before making said request].

(Docket Entry 35 at 29-30 (emphasis and certain brackets in original); <u>see also</u> <u>id.</u> at 38 (denying Protective Order Motion and Plaintiff's First MTC "without prejudice to Plaintiff filing, by August 10, 2023, a motion to compel discovery that specifically addresses (i) the merits of each of the Discovery Requests and/or Proposed Depositions as to which Plaintiff seeks further discovery and (ii) why permitting such discovery, including any requested deposition topic, qualifies as proportional given the 'significant restraints on the [Court's] ability to allow evidence beyond what was presented to the administrator' and the need to 'provid[e] prompt resolution of [ERISA] claims,' <u>Quesinberry</u>, 987 F.2d at 1025" and directing parties, prior to any such motion, to "confer about any outstanding discovery dispute(s) consistent with the standards, and in light of the principles, stated [in the July Opinion]").)

11

On August 7, 2023, Defendant served its second supplemental response to the Discovery Requests. (See Docket Entry 36-3 at 2, 53-54.) On August 8, 2023, the parties moved for an extension of Plaintiff's deadline to file any motion to compel. (See Docket Entry 36 at 5-6.) The Court granted the requested extension, ordering that "Plaintiff shall have until August 23, 2023 to file a renewed Motion to Compel discovery in accordance with the [July Opinion]." (Docket Entry 37 at 2.) On August 18, 2023, Defendant served its third supplemental responses to Plaintiff's Discovery Requests. (See Docket Entry 40-3 at 59, 61.) Minutes before midnight on August 23, 2023, Plaintiff filed his Second MTC. (See Docket Entry 40.) Notwithstanding Defendant's repeated supplementation of its responses, including its representations for multiple Discovery Requests that "[n]o documents exist which are responsive to th[at R]equest" (Docket Entry 40-3 at 48, 52, 53) and that "[Defendant] is not withholding any responsive documents" (id. at 48, 53, 56, 59), Plaintiff's Second MTC seeks to compel responses to all but one of the Discovery Requests and to compel depositions of Defendant and four of its employees/contractors. (See Docket Entry 40 at 3-4.)[7]

---

    7 Specifically, Plaintiff seeks compelled responses "within thirty (30) days [of] the [o]rder [resolving the Second MTC]" (id. at 3), depositions within 60 days of such order, a discovery deadline 90 days from such order, and a dispositive motions deadline set 120 days from said order. (See id. at 3-4.) Notably, the parties did not finish briefing Plaintiff's Second MTC until late September 2023 (see Docket Entry 46) and this case remains set

According to Plaintiff's memorandum in support of his Second MTC:

> The issue presented through Plaintiff's discovery requests in this motion is not whether Plaintiff presented the evidence he seeks to discover to Unum, but rather whether Unum presented Plaintiff and the Court all of the evidence that is part of the "evidentiary record" in this case. Unum should not be permitted to determine unilaterally what evidence in its files is or is not presented to the Court. The discovery Plaintiff seeks is discovery of exactly what Unum used and relied upon in its decision to deny Plaintiff's policy benefits. Discovery of what Unum used and relied upon to deny Plaintiff's claim is both proportional and appropriate in Plaintiff's case.

(Docket Entry 41 at 9; <u>see also</u> Docket Entry 46 at 4 ("Plaintiff's [Second MTC] does not seek to discover or admit a single piece of information that was not 'before' Unum during its claims process in this case. Plaintiff's motion is for discovery of potential evidence that Unum possesses, but which Plaintiff cannot access without the limited discovery he seeks.").)

**DISCUSSION**

**I. Second MTC**

**A. Relevant Discovery Standards**

"The purpose of discovery is to provide a mechanism for making relevant information available to the litigants." Fed. R. Civ. P.

___

for trial on April 1, 2024, with pretrial deadlines starting on March 1, 2024 (<u>see</u> Docket Entry 31 at 1). Even calculated from the date that Plaintiff, minutes before midnight, filed his reply in support of his Second MTC, Plaintiff's proposed timeline would extend briefing on any dispositive motions past the start of such pretrial deadlines.

13

26 advisory committee's notes, 1983 Amendment.  Therefore, "[u]nless otherwise limited by court order, the scope of discovery is as follows:  Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense <u>and proportional to the needs of the case</u> . . . ." Fed. R. Civ. P. 26(b)(1) (emphasis added).  However, "the simple fact that requested information is discoverable . . . does not mean that discovery must be had.  On its own initiative or in response to a motion for protective order under Rule 26(c), a district court may limit [discovery] . . . ." <u>Nicholas v. Wyndham Int'l, Inc.</u>, 373 F.3d 537, 543 (4th Cir. 2004).  Indeed, "[d]istrict courts enjoy nearly unfettered discretion to control the timing and scope of discovery." <u>Hinkle v. City of Clarksburg</u>, 81 F.3d 416, 426 (4th Cir. 1996); <u>see also</u> <u>Cook v. Howard</u>, 484 F. App'x 805, 812 (4th Cir. 2012) (observing that "[d]istrict courts are afforded broad discretion with respect to discovery").  Accordingly, "the [C]ourt has 'substantial discretion' to grant or deny motions to compel discovery." <u>English v. Johns</u>, No. 5:11-ct-3206, 2014 WL 555661, at *4 (E.D.N.C. Feb. 11, 2014) (quoting <u>Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.</u>, 43 F.3d 922, 929 (4th Cir. 1995)).

To channel that discretion, "[i]n this Court, generally, a party must file a motion to compel before the close of discovery in order for that motion to be deemed timely." <u>Smith v. 3M Co.</u>, No. 1:16cv379, 2018 WL 11424778, at *2 (M.D.N.C. Aug. 29, 2018)

(brackets and internal quotation marks omitted). "Moreover, mere speculation that documents exist is not a sound basis for a motion to compel production." Susko v. City of Weirton, No. 5:09cv1, 2011 WL 98557, at *4 (N.D. W. Va. Jan. 12, 2011); see also, e.g., M.S. ex rel. M.E.S. v. Woodland Hills Sch. Dist., No. 10-700, 2011 WL 294518, at *2 (W.D. Pa. Jan. 27, 2011) (observing, where defendant "indicat[ed] that it was not in possession of responsive information," that "[the court] cannot compel [the d]efendant to produce information that it does not have, and must accept its representation"); In re Lorazepam & Clorazepate Antitrust Litig., 219 F.R.D. 12, 17 (D.D.C. 2003) ("The federal courts are often confronted with a party's complaint that its opponent must have documents that it claims not to have. Such suspicion is, however, insufficient to warrant granting a motion to compel."). In addition, "the relevance standard of Rule 26 is not without bite, and will not allow parties to explore matter which does not presently appear germane on the theory that it might conceivably become so." Wall v. Reliance Standard Life Ins. Co., 341 F.R.D. 1, 5 (D.D.C. 2022) (internal quotation marks omitted).

Notably, Rule 26 "was amended in 2015 to emphasize the need for proportionality in discovery and to 'encourage judges to be more aggressive in identifying and discouraging discovery overuse.'" Id. (quoting Fed. R. Civ. P. 26 advisory committee's notes, 2015 Amendment, Subdivision (b)(1)). In this regard, "[t]he

15

parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes." Fed. R. Civ. P. 26 advisory committee's notes, 2015 Amendment. That directive extends the longstanding principle that the Rules "oblige[] each attorney to <u>stop and think</u> about the legitimacy of a discovery request, a response thereto, or an objection" before making such request, response, or objection. Fed. R. Civ. P. 26 advisory committee's notes, 1983 Amendment, Subdivision (g) (emphasis added); <u>see also</u> <u>id.</u> (explaining that the Rules "require[] the lawyer to pause and consider the reasonableness of his request, response, or objection"). In sum,

> the spirit of the [R]ules is violated when advocates attempt to use discovery tools as tactical weapons rather than to expose the facts and illuminate the issues by overuse of discovery or unnecessary use of defensive weapons or evasive responses. All of this results in excessively costly and time-consuming activities that are disproportionate to the nature of the case, the amount involved, or the issues or values at stake.

Fed. R. Civ. P. 26 advisory committee's notes, 1983 Amendment.

## B. Relevant ERISA Standards

In adjudicating ERISA-related claims for benefits, courts must "balance[] the[] multiple purposes of ERISA," which include "the goal of providing prompt resolution of claims and the concern that district courts should not be made into substitute plan administrators," considerations that "warrant significant restraints on the district court's ability to allow evidence beyond what was presented to the administrator." <u>Quesinberry</u>, 987 F.2d at

16

1025. Accordingly, in cases subject to de novo review, the Fourth

Circuit has

> adopt[ed] a scope of review that permits the district
> court in its discretion to allow evidence that was not
> before the plan administrator. The district court should
> exercise its discretion, however, <u>only</u> when circumstances
> <u>clearly establish</u> that additional evidence is <u>necessary</u>
> to conduct an adequate *de novo* review of the benefit
> decision. <u>In most cases</u>, where additional evidence is
> <u>not necessary</u> for adequate review of the benefits
> decision, the district court should <u>only</u> look at the
> evidence that was before the plan administrator or
> trustee at the time of the determination.

<u>Id.</u> (emphasis added).

> In other words,

> [district] courts conducting *de novo* review of ERISA
> benefits claims should review <u>only</u> the evidentiary record
> that was presented to the plan administrator or trustee
> <u>except</u> where the district court finds that additional
> evidence is <u>necessary</u> for resolution of the benefit
> claim. <u>Exceptional circumstances</u> that may warrant an
> exercise of the court's discretion to allow additional
> evidence include the following: claims that require
> consideration of complex medical questions or issues
> regarding the credibility of medical experts; the
> availability of very limited administrative review
> procedures with little or no evidentiary record; the
> necessity of evidence regarding interpretation of the
> terms of the plan rather than specific historical facts;
> instances where the payor and the administrator are the
> same entity and the court is concerned about
> impartiality; claims which would have been insurance
> contract claims prior to ERISA; and circumstances in
> which there is additional evidence that the claimant
> could not have presented in the administrative process.
> [The Fourth Circuit] d[id] not intimate, however, that
> the introduction of new evidence is required in such
> cases. A district court may well conclude that the case
> can be properly resolved on the administrative record
> without the need to put the parties to additional delay
> and expense.

17

This list of factors is not exhaustive but is merely a guide for district courts faced with motions to introduce evidence not presented to the plan administrator. In determining whether to grant such a motion, the district court should address why the evidence proffered was not submitted to the plan administrator. . . .

Id. at 1026-27 (emphasis added).

Notably, although uncertainty exists regarding "the precise standard that an ERISA plaintiff must meet to obtain discovery outside of the administrative record," N'Diaye v. Metropolitan Life Ins. Co., No. 17cv4260, 2018 WL 2316335, at *6 (S.D.N.Y. May 8, 2018), in ERISA cases, the Fourth Circuit still "affords substantial discretion to a district court in managing discovery," Beckner v. American Benefit Corp., 273 F. App'x 226, 232 (4th Cir. 2008). In the exercise of that discretion in de novo review situations, the Quesinberry principles for admission of evidence logically inform resolution of discovery disputes. See, e.g., Termini v. Life Ins. Co. of N. Am., No. 2:06cv591, 2007 WL 1556850, at *3 (E.D. Va. May 21, 2007) ("Under the framework of ERISA, therefore, [the] plaintiff's discovery is appropriate only if the [c]ourt determines that the [relevant] policy does not grant discretionary authority — resulting in the [c]ourt's undertaking a de novo review of the administrator's denial of benefits — and that an exceptional circumstance is present.").

18

## C. Analysis

This Court previously warned Plaintiff that his Discovery Requests "appear[ed] expansive in scope, as well as of limited relevance and/or questionable proportionality given the . . . exceptional circumstances" that Plaintiff asserts this case involves. (Docket Entry 35 at 28.) The Court therefore ordered Plaintiff to "specifically address[]" (id. at 38) in any subsequent motion to compel

> (i) the merits of each of the Discovery Requests and/or Proposed Depositions as to which Plaintiff seeks further discovery and (ii) why permitting such discovery, including any requested deposition topic, qualifies as proportional given the "significant restraints on the [Court's] ability to allow evidence beyond what was presented to the administrator" and the need to "provid[e] prompt resolution of [ERISA] claims," Quesinberry, 987 F.2d at 1025.

(Docket Entry 35 at 38 (brackets in original).) As evidenced by Plaintiff's own description of the purposes of his discovery, the Second MTC fails to satisfy this directive. (See, e.g., Docket Entry 41 at 9 ("The issue presented through Plaintiff's discovery requests in this motion is . . . whether Unum presented Plaintiff and the Court all of the evidence that is part of the 'evidentiary record' in this case. . . . The discovery Plaintiff seeks is discovery of exactly what Unum used and relied upon in its decision to deny Plaintiff's policy benefits. Discovery of what Unum used and relied upon to deny Plaintiff's claim is both proportional and appropriate in Plaintiff's case."); see also Docket Entry 46 at 7

19

("These requests are proportional to the case at bar because they request Unum to produce information about Plaintiff's claim that it already possesses.").)

This case presents one substantive issue: "whether [Plaintiff] was entitled to [LTD] benefits," Tekmen, 55 F.4th at 961. See also Johnson, 716 F.3d at 819 (explaining that, on de novo review, "[the court's] job is to make [its] own independent determination of whether [the plaintiff] was entitled to the [requested] benefits"). To resolve this issue, according to Plaintiff, "[t]he Court will sit as fact-finder to decide whether Dr. Taekman has shown by a preponderance of the admitted evidence that he was limited from performing the normal duties of a clinical anesthesiologist." (Docket Entry 41 at 3.) Or, as the Fourth Circuit has stated: "In conducting de novo review of a denial of benefits under ERISA, the district court undertakes a careful examination of the often-voluminous administrative record to determine whether the claimant was entitled to benefits." Tekmen, 55 F.4th at 961.[8]

_____

[8] In his memorandum in support of his Second MTC, Plaintiff for the first time attempts to justify his Discovery Requests and Proposed Depositions on the grounds that he "has also made a claim for attorneys' fees." (Docket Entry 41 at 11.) Despite multiple rounds of briefing over multiple months regarding this discovery dispute, Plaintiff waited until late August to assert such a justification for his desired discovery. (See, e.g., Docket Entries 25, 33, 41.) Moreover, the same test for awarding attorney's fees applies in ERISA cases involving both the abuse of discretion and de novo standards of review. See Williams v. Metropolitan Life Ins. Co., 609 F.3d 622, 634-36 (4th Cir. 2010)

This narrow focus serves as the guidepost for measuring the relevance and proportionality of Plaintiff's requested discovery. See, e.g., Fed. R. Civ. P. 26 advisory committee's notes, 2000 Amendment, Subdivision (b)(1) ("The Committee intends that the parties and the court focus on the actual claims and defenses involved in the action."). Despite the extremely limited circumstances under which the Court could choose to exercise its discretion to admit additional evidence in making this

---

(affirming attorney's fee award in abuse of discretion ERISA case); Quesinberry, 987 F.2d at 1028-30 (analyzing attorney's fee ruling in de novo ERISA case). However, when "a court reviews an administrator's decision under a deferential standard, discovery and introduction of extrinsic evidence pertaining to the 'mental processes of the plan's administrator' are generally, if not uniformly, disallowed." Donnell v. Metropolitan Life Ins. Co., 165 F. App'x 288, 297 (4th Cir. 2006) (citing Perlman v. Swiss Bank Corp. Comprehensive Disability Prot. Plan, 195 F.3d 975, 981-82 (7th Cir. 1999)); see also Perlman, 195 F.3d at 981-82 ("It follows from the conclusion that review of [the plan administrator's] decision is deferential that the district court erred in permitting discovery into [the administrator's] decision-making. There should not have been any inquiry into the thought processes of [the administrator's] staff, the training of those who considered [the plaintiff's] claim, and in general who said what to whom within [the administrator] — all of which [the plaintiff] was allowed to explore at length by depositions and interrogatories, and on some of which the district judge relied. Deferential review of an administrative decision means review on the administrative record. . . ."). Accordingly, the simple fact that an ERISA plaintiff seeks attorney's fees cannot, by itself, justify wide-ranging discovery. Yet, as noted, Plaintiff seeks expansive discovery, including into Defendant's "training materials" and internal "decision-making process" (Docket Entry 43-1 at 3) and by "deposing the employees who participated in [certain] meetings to determine both the substance of what was said and advised, as well as any further information that may lead to admissible evidence" (Docket Entry 41 at 16). Under the circumstances, Plaintiff's attorney's fee request does not justify further compelled discovery.

determination, see Quesinberry, 987 F.2d at 1025-27, Plaintiff continues to seek compelled production of information with minimal, if any, relevance to this determination (see, e.g., Docket Entry 40-3 at 42 (requesting "a copy of the 'Benefits Center Claims Manual' and any other manual(s), internal rule(s), regulation(s), guideline(s), protocol(s), policy(ies), procedure(s), memorandum(a), directive(s), guidebook(s), and <u>any other criteria of any type or form that relates in any way to Unum's determination of disability, coverage, and/or award or denial of benefits of disability insurance claims or disability plans administered by Unum [that] was in effect from 2018 through the present</u>, as well as all changes made to any one or more of these materials during this same period" (emphasis added)); see also Docket Entry 41 at 21-22 (confirming that particular request seeks materials regarding "Unum's administration of disability claims generally" as distinct from "Plaintiff's claim," as to which another request seeks same categories of information)).

Further, on April 13, 2023, Defendant filed a Declaration averring (i) that "[e]verything [Defendant] did and considered during its investigation of Plaintiff's claim and in deciding his appeal is contained in the claim file[ included in the administrative record filed as Exhibit C to the Protective Order Motion], including any additional material submitted during the appeal" (Docket Entry 17-1, ¶ 5; see id., ¶ 4), (ii) that Defendant

22

removed no documents from its claim file when it provided "the entire file" to Plaintiff on December 3, 2020 (id., ¶ 6), and August 5, 2021 (id., ¶ 7), and (iii) that Defendant has only removed post-claim-denial "settlement communications and Alternative Resolution Team documentation from the Administrative Record filed with the Court," per a pre-litigation agreement between the parties (id., ¶ 8). In the months that followed, Defendant repeatedly reiterated in response to Plaintiff's Discovery Requests that the filed administrative record contains all material that it considered in adjudicating Plaintiff's benefits claim. (See, e.g., Docket Entry 40-3 at 58-59 (objecting to request to "produce and bates stamp all documents of any type or form or format whatsoever that comprise Unum's entire, unredacted, complete claims file respecting [Dr.] Taekman" on grounds that "it is unreasonably cumulative and duplicative insofar as it seeks production of the Administrative Record previously provided to Plaintiff's counsel" but "stat[ing] that all documents responsive to this Request were included in the Administrative Record previously produced to Plaintiff's counsel" and "further respond[ing] that, since all documents responsive to this Request were included in the Administrative Record previously produced to Plaintiff, Unum is not withholding any responsive documents").)

Nevertheless, Plaintiff continues to pursue what he himself describes as "discovery of exactly what Unum used and relied upon

23

in its decision to deny Plaintiff's policy benefits," arguing that "[d]iscovery of what Unum used and relied upon to deny Plaintiff's claim is both proportional and appropriate in Plaintiff's case." (Docket Entry 41 at 9; see also id. at 8 ("Plaintiff submits that much of the information he requests is part of the evidentiary record because it is information Unum possessed and may have relied upon, [sic] in reviewing Plaintiff's claim.").) Notably, Plaintiff has produced no evidence, despite multiple opportunities to do so, that the administrative record Defendant filed does not contain all materials Plaintiff submitted and/or Defendant considered in its claim adjudication. Instead, in unsworn memoranda, Plaintiff's counsel repeatedly asserts that "Plaintiff has identified items and information missing from Unum's proposed record." (Docket Entry 25 at 15; see also, e.g., id. at 21-23; Docket Entry 41 at 11; Docket Entry 46 at 15.)[9]

In this regard, Plaintiff first asserts that, on April 12, 2023, he obtained, through discovery, "the curriculum vitae [(the "CVs")] of Unum's medical record reviewers" and that he "would not know the 'facts' contained in the CVs, absent his efforts to conduct discovery." (Docket Entry 25 at 21-22.) According to Plaintiff, "[t]he CVs demonstrate that there were 'facts' known to Unum at the time of the appeal decision which were not known to

---

9 As this Court previously explained, "an attorney's unsworn argument does not constitute evidence." (Docket Entry 35 at 19 (internal quotation marks omitted).)

Plaintiff, and which Unum now contends should be excluded from the Court's review." (Id. at 22.) Defendant disputes this assertion, arguing that (i) "the signature blocks on the physicians' reports . . . are sufficient to demonstrate their credentials and the medical specialties in which they are board certified" (Docket Entry 29 at 7) and (ii) "there is no requirement that CVs be included in the [administrative record], particularly where the claims administrator is familiar with the qualifications of the reviewing physicians" (id.). (See id. at 7-8 (citing N'Diaye, 2018 WL 2316335, at *10 (characterizing such CVs as "documents beyond the administrative record")).) Plaintiff neither challenges these assertions nor contends that the administrative record should contain the CVs. (See Docket Entries 41, 46.)[10]

Further, along with the information contained in the CVs, Plaintiff possesses additional information regarding Defendant's medical reviewers. (See, e.g., Docket Entry 40-3 at 22 (detailing medical reviewers' payment and employment structures).) However, he has not explained either the significance of this information for the Court's adjudication of his claim or the necessity of additional discovery in light of the information Defendant has already provided. (See Docket Entries 41, 46.) Plaintiff thus

_____

10   Indeed, given his failure to address this issue in briefing his Second MTC, Plaintiff arguably abandoned it.

25

fails to undermine the Declaration or to establish the proportionality of the additional discovery he seeks.

Second, Plaintiff maintains that the administrative record omits "the articles Plaintiff submitted in support of his claim prior to Unum's denial." (Docket Entry 46 at 15 (emphasis omitted).) As this Court previously explained, "[t]he record does not reflect whether Plaintiff submitted copies of the articles to Defendant or instead provided only a link to the referenced 'two papers.'" (Docket Entry 35 at 25.) Despite this warning, and despite again relying on this unsworn contention in his Second MTC, Plaintiff failed to introduce any evidence establishing that he submitted actual copies of the referenced articles to Defendant rather than the link that appears in the administrative record. (See Docket Entries 40 to 42-3, 46.) Accordingly, the record does not refute the sworn Declaration that the filed administrative record "contains the documents submitted to [Defendant] by or on behalf of Plaintiff" (Docket Entry 17-1, ¶ 4) and "all of the facts known to [Defendant] at the time the appeal decision was rendered" (id., ¶ 5). Given the Declaration's sworn assertion that "[e]verything [Defendant] did and considered during its investigation of Plaintiff's claim and in deciding his appeal is contained in the claim file, including any additional material submitted during the appeal" (id.), Plaintiff's attempt to justify his request for compelled production of further information on the

26

grounds that "it is information Unum possessed and may have relied upon[] in reviewing Plaintiff's claim" (Docket Entry 41 at 8) falls short.

Moreover, Plaintiff continues to insist on compelled production even regarding Discovery Requests as to which Defendant stated no responsive documents exist and/or it has not withheld any responsive documents. (See, e.g., id. at 2 (seeking to compel responses to all Discovery Requests except for first interrogatory); see also Docket Entry 40-3 at 48, 52, 53, 56, 59 (stating that "[n]o documents exist which are responsive to th[e R]equest" and/or that "[Defendant] is not withholding any responsive documents").) "[T]he [C]ourt cannot compel [Defendant] to produce documents it does not possess." United States ex rel. Adams v. Remain at Home Senior Care, LLC, No. 1:17-cv-1493, 2022 WL 130942, at *3 (D.S.C. Jan. 14, 2022); see also Kinetic Concepts, Inc. v. ConvaTec Inc., 268 F.R.D. 226, 252 (M.D.N.C. 2010) (explaining that "even an informed suspicion that additional non-privileged documents exist . . . cannot alone support an order compelling production of documents").[11]

_____

[11]    Plaintiff argues that his discovery requests "are proportional to the case at bar because they request Unum to produce information about Plaintiff's claim that it already possesses." (Docket Entry 46 at 7.) Possession of the requested material serves as a basic requirement for discovery, not a limitation that renders the requested discovery proportionate. See, e.g., M.S., 2011 WL 294518, at *2 ("[The Court] cannot compel Defendant to produce information that it does not have, and must accept its representation [to that effect]."); Payless Shoesource

27

Of note here, Defendant has repeatedly supplemented its discovery responses, notwithstanding its objections thereto, despite the fact that Plaintiff (i) sought discovery too close to the discovery deadline to secure any subsequent discovery (see Docket Entry 18-1 at 21); see also Fed. R. Civ. P. 33(b)(2); Fed. R. Civ. P. 34(b)(2)(A), and (ii) failed to move to compel prior to the discovery deadline (see Docket Entries dated Jan. 31, 2023, to Apr. 28, 2023). (See, e.g., Docket Entry 40-3.) Additionally, despite the Court's warnings regarding the expansive and problematic nature of Plaintiff's Discovery Requests (see Docket Entry 35 at 28) and the significant ERISA-related constraints impacting discovery in this matter (see, e.g., id. at 28-29), Plaintiff has not meaningfully limited his discovery requests or explained how the further discovery he seeks qualifies as proportional given the discovery already provided and/or the limited circumstances under which the Court could consider material outside the administrative record in adjudicating his claim. (See

_____

Worldwide, Inc. v. Target Corp., Civ. Action No. 05-4023, 2008 WL 973118, at *4 (D. Kan. Apr. 8, 2008) (explaining that "[Rule] 34 does not require a party to create responsive documents if they do not exist in the first instance" and "the Court cannot compel a party to produce documents that do not exist" (internal quotation marks omitted)). Moreover, such proportionality argument fails to satisfy the July Opinion's directive that any motion to compel specifically address why further discovery "qualifies as proportional given the significant restraints on the Court's ability to allow evidence beyond what was presented to the administrator and the need to provide prompt resolution of ERISA claims" (Docket Entry 35 at 38 (brackets and internal quotation marks omitted)).

Docket Entries 40 to 42-3, 46.) In addition, the provided deposition subpoenas reflect an issuance date of April 26, 2023, for depositions on April 26, 2023. (See Docket Entry 40-2 at 1, 4, 7, 10, 13.) Even accepting Plaintiff's counsel's unsworn assertion that Plaintiff first notified Defendant of the proposed depositions on April 11, 2023, the reasonableness of such notice, in the context of this case, appears questionable.

Under the circumstances, the Court finds that the Discovery Requests and Proposed Depositions qualify as disproportionate and impose an undue burden on Defendant and the proposed deponents. The Court therefore denies the Second MTC. Under the circumstances, including the prior denial of the Protective Order Motion, the Court further finds that each side should bear its own expenses, including attorney's fees, for this discovery dispute. See Fed. R. Civ. P. 37(a)(5)(B) (precluding expense-shifting where "circumstances make an award of expenses unjust").

## II. Extension Motion

As noted, the "[C]ourt enjoy[s] nearly unfettered discretion to control the timing and scope of discovery." Hinkle, 81 F.3d at 426. In exercising this discretion, however, the Court remains mindful that the Rules generally require issuance of a scheduling order early in each case, see Fed. R. Civ. P. 16(b), and that "[t]he drafters of the Rules intended [the scheduling] order to control the subsequent course of the action so as to improve the

quality of justice rendered in the federal courts by sharpening the preparation and presentation of cases, tending to eliminate trial surprise, and improving, as well as facilitating, the settlement process," Forstmann v. Culp, 114 F.R.D. 83, 84-85 (M.D.N.C. 1987) (internal quotation marks omitted). As such, the discovery "schedule may be modified only for good cause and with the [Court's] consent." Fed. R. Civ. P. 16(b)(4). "[T]he touchstone of 'good cause' under Rule 16(b) is diligence." Marcum v. Zimmer, 163 F.R.D. 250, 255 (S.D. W. Va. 1995); see also Fed. R. Civ. P. 16 advisory committee's note, 1983 Amendment, Subdivision (b) ("[T]he court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension." (emphasis added)).

Filed on the last day of the discovery period, the Extension Motion "requests that the Court continue the discovery period in this case beyond April 28, 2023 and until a reasonable time period following its adjudication of the Parties' discovery motions." (Docket Entry 22 at 3; see also id. at 4.) According to both the proposed order submitted contemporaneously therewith and Plaintiff's Second MTC, Plaintiff envisioned that "reasonable time period" (id. at 3) as "ninety (90) days from the date of [the Court's] order" (Docket Entry 40 at 4) resolving the parties' successive discovery motions. (See Docket Entry 22-1 at 1-2.) Per the Extension Motion, Plaintiff served his Discovery Requests on

March 13, 2023 (Docket Entry 22 at 1), and notified Defendant of the Proposed Depositions no earlier than April 11, 2023 (see id. at 1-2), but, in Plaintiff's view, "[t]he parties have diligently pursued discovery during the current discovery period" (id. at 3). Given that, in October 2022, the parties agreed to, and the Court adopted, a discovery deadline of April 28, 2023 (see Docket Entry 12 at 3; Text Order dated Oct. 27, 2022), waiting until March 13, 2023, to begin discovery does not qualify as diligently pursuing discovery. Therefore, the Court denies the Extension Motion.

<u>**CONCLUSION**</u>

The Second MTC fails to comply with the July Opinion and seeks disproportionate and unduly burdensome discovery, and Plaintiff has not established good cause to extend the discovery period.

**IT IS THEREFORE ORDERED** that the Second MTC (Docket Entry 40) and Extension Motion (Docket Entry 22) are **DENIED.**

**IT IS FURTHER ORDERED** that the parties file any dispositive motions no later than October 25, 2023, any responses to such

31

motions by November 15, 2023, and any replies to such responses by November 22, 2023.[12]

      This 4th day of October, 2023.

_____/s/ L. Patrick Auld_____
**L. Patrick Auld**
**United States Magistrate Judge**

---

    12  The Court has adopted these dates to allow the completion of briefing in time for issuance of a recommended ruling and for the filing and review of objections in advance of the final pretrial deadlines.  As a result, the parties should not anticipate receipt of any extensions of such deadlines.